UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

UNITED STATES OF AMERICA,              )  Case No. 22-CR-00031DKW
                                       )
                        Plaintiff,     )  July 14, 2022
                                       )  10:32 a.m.
            vs.                        )
                                       )
LINDSEY KINNEY,                        )
                                       )  U.S. District Court
                        Defendant.     )  300 Ala Moana Boulevard
                                       )  Honolulu, HI 96850
_____   )


TRANSCRIPT OF HEARING ON DEFENDANT'S MOTION FOR PRETRIAL
SUPERVISED RELEASE
BEFORE THE HONORABLE ROM TRADER
UNITED STATES MAGISTRATE JUDGE

<u>APPEARANCES:</u>

For the Plaintiff:              Craig S. Nolan, Esq.
                                U.S. Attorney's Office
                                300 Ala Moana Boulevard, #6100
                                Honolulu, HI  96850

For the Defendant:              Benjamin R.C. Ignacio, Esq.
                                1130 N. Nimitz Highway, #B-223
                                Honolulu, HI  96817

Transcription Service:          Jessica B. Cahill, CER/CET-708
                                Maukele Transcribers, LLC
                                467 Maukele Place
                                Wailuku, Maui, HI  96793
                                Telephone: (808)244-0776




Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

```
 1   JULY 14, 2022                                 10:34 A.M.

 2            THE CLERK:  The United States District Court for the

 3   District of Hawai'i with the Honorable Magistrate Judge Rom

 4   Trader presiding is now in session.  The gallery may be seated.

 5            Criminal number 22-00031DKW, United States of America

 6   v. Defendant (01) Lindsey Kinney.  This case has been called for

 7   a motion hearing.

 8            Counsel, your appearances for the record, starting with

 9   counsel for the Government, please.

10            MR. NOLAN:  Good morning, Your Honor.  Craig Nolan for

11   the Government.  Erin Patrick from Pretrial Services is also

12   present.

13            THE COURT:  Okay.  Good morning.

14            MR. IGNACIO:  And good morning, Your Honor.  Benjamin

15   Ignacio on behalf of Defendant Lindsey Kinney, who is present,

16   standing to my left.  Also present in the courtroom, Your Honor,

17   is a proposed sponsor in this case or in this motion, Lexine

18   (phonetic) Kinney.

19            THE COURT:  All right.  Very good.  Good morning to

20   you, Mr. Ignacio, and to you, Mr. Kinney.  Have a seat.

21            All right.  Before we get started I believe, as I

22   recall from the last proceeding that was in person, I just want

23   to start off with just some house rules, okay.  This is a public

24   proceeding.  The public has every right to be here, and we're

25   more than welcome to have you.
```

1            To the extent that there are rules that apply for those

2    in attendance, as long as those rules are abided by, which is

3    essentially to be respectful, and not speak up and cause any sort

4    of disruption, you're more than welcome to remain.  Anyone that

5    chooses not to follow those basic rules, okay, I'm going to warn

6    you, if that happens, and if that persists, I will have you

7    removed, okay.  And all of that is easily avoided if we just kind

8    of proceed, okay, because all that distracts from essentially the

9    merits of the decision and the process that's due to Mr. Kinney

10   and the Government in this matter, okay.

11           All right.  So with that, we are here on Mr. Kinney's

12   motion to reopen the detention order in this case.  I will take

13   judicial notice of the records and files, and that will include

14   the indictment on file in this case, the prior motion to detain,

15   which I'll note was not based upon the -- any sort of presumption

16   for detention.  Beyond that, I have reviewed the prior order of

17   detention and am in receipt of the Government -- excuse me, the

18   Pretrial Services addendum, which is dated today's date, July

19   14th, 2022, and they were kind enough to include the prior

20   report.

21           Okay.  So I think I have everything.  I also thank Ms.

22   Kinney.  I guess, she's the -- where are you at, Ms. Kinney?

23   Okay.  Good.  The proposed third-party custodian, who is present.

24           Okay.  So with that -- and then, Mr. Nolan, just to

25   double check, there was no written response filed to the motion;

1   is that correct?

2            MR. NOLAN:  That's correct.  I provided some

3   information to Pretrial Services, which the Defense already has.

4            THE COURT:  Okay.  I just wanted to make sure because

5   sometimes things get filed, and perhaps if I didn't have the time

6   to double check and maybe it got lost along the way.  Okay.

7   Good.

8            All right.  So with that, Mr. Ignacio, it's your

9   motion.  I'll be happy to hear from you, sir.

10           MR. IGNACIO:  Thank you, Your Honor.

11           So currently Mr. Kinney is in custody at the Federal

12   Detention Center.  He's also being held in the Special Housing

13   Unit --

14           THE COURT:  Uh-huh.

15           MR. IGNACIO:  -- at the Federal Detention Center

16   because of circumstances unrelated to this charge.  Essentially,

17   I think there's no secret to this, Mr. Kinney is a material

18   witness in a federal prosecution against another defendant in

19   another case and that's why he's in the SHU, Your Honor, is

20   because of protection.

21           THE COURT:  Uh-huh.

22           MR. IGNACIO:  However, he has experienced a handful of

23   uncomfortable incidents there, including almost being housed with

24   a potentially violent and by his own failed statements, somebody

25   who is involved in the other criminal prosecution where Mr.

1    Kinney is potentially a witness for the Government.

2           Additionally, as my motion indicates, Mr. Kinney is

3    supposed to be on medication, and he's not receiving that.  I

4    don't have much more information on that, but I do think that

5    it's also important for Your Honor to consider.

6           Now previously when the detention hearing was

7    originally held Your Honor granted the motion to detain and,

8    although I disagree with it, I can certainly understand being

9    given some pause because of the Defendant's statements both in

10   court and then to Pretrial Services about moving back to the

11   mountains and planning not to abide by any terms and conditions

12   imposed by the Court.

13          And what I would ask Your Honor to do is consider that

14   just pure bluster.  I don't think that there's any history or

15   evidence of Mr. Kinney acting on those types of ideas.  This is

16   still America, and we are still entitled to each hold our closely

17   held political beliefs.  Mr. Kinney is a radical for sure, but he

18   -- not once has he taken any steps towards action, including in

19   the criminal charges in this case.  And I think that that's

20   important to consider.

21          Nowhere in the pretrial bail report is there any

22   genuine indication of a history of violence.  Of any performance

23   of violence.  Any visitation of violence upon others.  Just a lot

24   of bluster, Your Honor.  Statements at the previous hearing that

25   the jurisdiction of this Court is rejected by him, I would ask

1    Your Honor to recognize that it hasn't been tested, and if he's

2    put on terms and conditions, if the alternative is for him to

3    stay in the SHU, I think it's pretty clear what he will do, and

4    that is to abide by the terms and conditions.

5             He's even said so in the most recent interview.  I do

6    think that it's unfortunate that he made some comments about not

7    abiding after September.  I've spoken to him about that, and it's

8    my understanding that he is hoping that this matter concludes in

9    September.  That's when it's set for trial.  I think that --

10   well, he's explained to me that's the only reason he said he

11   wasn't planning on abiding after September.  Not out of any, you

12   know, time limitation.  It's just because he expects to be done

13   in September.

14            When I explained to him that if this matter does not

15   conclude in September and he is still expected to remain on terms

16   and conditions, he's expressed to me that he's prepared to follow

17   those terms and conditions.

18            THE COURT:  Right.  What if he doesn't agree with the

19   terms and conditions the Court might set, as it does in most

20   cases?  And the same will be true for Mr. Kinney, all right.  So,

21   in particular, given the context within which I'm evaluating this

22   request, which is whether or not he's going to abide by the

23   terms, okay, and I hear what you're saying, and I'm taking stock

24   of that.

25            But in the prior pretrial report, I believe there was a

1    reference with regard to substance abuse.  And, in particular, on

2    page 3 of the prior report under the heading of health, the

3    second paragraph.

4              THE DEFENDANT:  No proof.

5              THE COURT:  It basically indicates that he's not

6    willing to refrain from the use of, for example, marijuana.  All

7    right.  And it was explained to him at that time that that would

8    be a violation and would not be permitted because it was a

9    violation of federal law.  State Court that's maybe a different

10   story depending upon what the circumstances are.  But can you

11   speak to that, please.

12             MR. IGNACIO:  Well, he's telling me that he's willing

13   to abide, Your Honor.

14             THE COURT:  Okay.

15             MR. IGNACIO:  He's whispering that to me now.

16             THE COURT:  Okay.  I understand.

17             All right.  So anything else you want to offer with

18   regard to the proposed offer?

19             MR. IGNACIO:  I think other than highlighting the

20   bluster aspect of Mr. Kinney's comments, I think the other thing

21   to -- I can note is that significant circumstances changed since

22   our previous hearing and that's essentially that Mr. Kinney has

23   been in SHU for this time, and he now knows that the alternative

24   to the SHU -- or the only alternative to the SHU requires him to

25   comply with these court orders.

```
 1                  THE COURT:  Okay.

 2                  MR. IGNACIO:  Thank you.

 3                  THE COURT:  All right.  Thank you very much.  All

 4     right.  Mr. Nolan.

 5                  MR. NOLAN:  Thank you, Your Honor.  Obviously, the

 6     Court's well versed in the history, having sat on the -- in the

 7     original hearing, so let me just add a few things to what the

 8     Court already knows.

 9                  It's a crime of violence under 3156 because of

10     threatened uses of force.  That's 18 U.S.C. 3156(a)(4).  That's

11     the definition of crime of violence.  That's what makes it

12     eligible for detention, in part.  The other is a risk of flight

13     or non-appearance.

14                  Second, as the Court knows, we have threats to multiple

15     victims, not just the charged offense.  On top of that we spoke a

16     little bit last time about the arrest, which did not or has not

17     yet resulted in a stay of prosecution and execution of search

18     warrant at Mr. Kinney's residence.

19                  I have produced the reports to the Defense. They're

20     about 230 pages.  I provided a copy to Pretrial Services.  I have

21     a few with me.  A few notable facts from those reports.  One is

22     Mr. Kinney resisted and had to be subdued physically and

23     threatened by the police --

24                  THE DEFENDANT:  Object.

25                  MR. NOLAN:  -- during a --
```

1          THE COURT:  Hold on, Mr. Kinney.  Okay.  Please don't

2    speak.  Go ahead.

3          MR. NOLAN:  During --

4          THE DEFENDANT:  It was from a distance.

5          MR. NOLAN:  During the interaction he had to be

6    threatened by the police who were on top of him and concerned

7    because of --

8          THE DEFENDANT:  They kill me.

9          MR. NOLAN:  -- firearms and the like.

10         THE DEFENDANT:  They tried to kill me, sir.

11         THE COURT:  Mr. Kinney, I'm going to just -- all right.

12   Look --

13         THE DEFENDANT:  They tried to kill me.

14         THE COURT:  No, hold on.  You have a lawyer, okay.  You

15   heard the comments that I stated earlier, okay.  Mr. Kinney, you

16   have a right to be here, but that right is not absolute, okay.

17   So I'm just going to -- I know it's not easy for you, okay, but

18   I'm going to remind you, you need to follow the rules.  And one

19   of those is unless I ask you to speak, all right, when you're

20   permitted to do so, you don't interrupt, you don't speak up.

21   Okay.

22         All right.  Thank you, sir.  Go ahead.

23         MR. NOLAN:  So during this resistance by the Defendant

24   he eventually complied with the officer's commands, only when the

25   officer stated that he would render him unconscious.  Render Mr.

1   Kinney unconscious should he continue resisting.  And he did, at

2   that point, to his credit, stop.

3           During the search of his residence, in his bedroom,

4   three firearms were found, a pistol and two assault rifle type

5   weapons.  All were ghost guns.  None with serial numbers.  Mr.

6   Kinney, of course, did not have the required permits under state

7   law.  Again, it's not been prosecuted.  I can't comment on that.

8           His proposed custodian today, showed up at the

9   residence, demonstrated that she was a co-tenant of that

10  residence to the police.  I think she had a lease or something.

11  But to the satisfaction of HPD, and in fact HPD even sought her

12  consent to search her bedroom.

13          So I raise that because he's asking to be released to

14  his mother.  His mother was a tenant at the time he unlawfully,

15  under state law, possessed firearms.  They are significant

16  firearms.  There was also ammunition.  And the guns were loaded

17  according to report.  I'm happy to pass this up to the Court, to

18  the Defense.  The Defense already has these materials, but, of

19  course, these are just a few things out of 230 pages.

20          That's very concerning.  Those are violations of state

21  law, whether or not prosecuted.  It involves the presence of the

22  custodian in the household where these guns were being kept, and

23  we don't think she is suitable because of that.  She also has --

24  a criminal record check would reveal that she has charges.

25          THE COURT:  She has an arrest.

1          MR. NOLAN:  2006 and 2012 time frame, I understand --

2    my reading of the record is there are no convictions, and they

3    were drug related.  And Your Honor probably is much more familiar

4    with State law than I am and can read that criminal record check

5    better than I.

6          But for all of those reasons and everything else, that

7    the Court has read, heard, and seen, Mr. Kinney would pose a

8    danger that cannot be mitigated by conditions given his history,

9    given his failure to recognize this Court and the Government

10   appropriately -- and given the statements he's made to Pretrial

11   Services, including his recent statements.  Thank you.

12         THE COURT:  All right.  Thank you, Mr. Nolan.

13         All right.  Mr. Ignacio, to the extent that you brought

14   the motion, I'll give you the last word, and then I'll invite you

15   to have just a brief word -- maybe privately with your client,

16   not that I would necessarily advise it.  That's not my role, but

17   Mr. Kinney has something that he wishes to share that may be

18   relevant to the Court's decision, and I underscore that word

19   relevant, okay.  I'm happy to give him an opportunity, okay.

20         MR. IGNACIO:  Thank you, Your Honor.  And I appreciate

21   it.  I do -- you know, Mr. Kinney has refrained from objecting as

22   much as he would have liked --

23         THE COURT:  I'm sure.

24         MR. IGNACIO:  -- in this case, and I appreciate that.

25   And that's an example of how he would comply, Your Honor.

1          But, essentially, what I wanted to respond to is with

2   respect to these firearms, and I hope that what I say satisfies

3   what he feels is necessary for the objection that he wanted.

4   But, essentially, the timing of the search, the --

5          (Counsel and Defendant confer)

6          MR. IGNACIO:  The timing of the search, the execution

7   of the search, the recovery of these ghost firearms, and the

8   complete absence of prosecution for ghost firearms that were

9   illegally -- allegedly, illegally obtained, is definitely

10  concerning.

11         THE COURT:  Can I ask you a quick question?  I should

12  have asked Mr. Nolan, I'm sorry.  What date was the search

13  warrant executed?

14         MR. IGNACIO:  That was --

15         THE COURT:  Just for context.

16         MR. IGNACIO:  -- in December of 2020, Your Honor.

17         THE COURT:  Okay.  Is that --

18         MR. NOLAN:  I have it as November, but it's that time

19  frame.

20         MR. IGNACIO:  Yeah.

21         THE COURT:  Okay.  November, December.

22         THE DEFENDANT:  November 29th.

23         THE COURT:  Okay.

24         MR. IGNACIO:  And that's right around the time that

25  this whole Miske thing started to pick up.  It's right around the

```
 1  time that problems in the Prosecutor's Office and problems with

 2  HPD were starting to come to light.

 3          THE DEFENDANT:  I had to protect myself.

 4      (Counsel and Defendant confer)

 5          MR. IGNACIO:  Mr. Kinney's involvement as peripheral as

 6  it is, is -- this phantom search that didn't result in the

 7  prosecution of very frightening firearms, leads one to wonder

 8  what the purpose of that search was.  And so I think that's what

 9  my client is trying to get at is that shouldn't be held against

10  him because it's suspect all around.

11          THE COURT:  All right.

12          MR. IGNACIO:  I think he probably has some other

13  things --

14          THE COURT:  Yeah.

15          MR. IGNACIO:  -- but I honestly don't think they're

16  relevant.

17          THE COURT:  Okay.  Just listen to me, okay, Mr. Kinney?

18          THE DEFENDANT:  Yes, sir.

19          THE COURT:  Okay.  I appreciate it.  I know it's not

20  easy for you.

21          THE DEFENDANT:  Uh-huh.

22          THE COURT:  Okay.  But, look, all right, I'm happy to

23  give you a brief opportunity to make a statement regarding

24  anything relevant to the decision to -- on this motion, okay.

25  It's not opportunity to share whatever and anything you want to.
```

1          Number two is this.  I'm going to ask you to speak just

2    briefly to Mr. Ignacio because what I don't want you to do is to

3    say anything that you really shouldn't say with this particular

4    prosecution that's currently ongoing in federal court.  While

5    there are no State charges, that doesn't mean that there won't

6    be.  And one of the things we always remind individuals about is

7    you have a right to not say anything that can be used against

8    you, okay.  If you think you can do that after you speak briefly

9    with Mr. Ignacio, I'm happy to give you an opportunity.

10         Okay, but if I hear anything that I think, one, is not

11   relevant, okay; or, two, I think you are wandering off and

12   crossing the line into some things that perhaps you should not be

13   talking about, I won't hesitate to cut you off.  And it's not

14   because I'm trying to be rude to you.  I want you to understand

15   that.  It's because the issue before me to day is very narrow.

16   It's not about everything, okay.

17         THE DEFENDANT:  Yeah.

18         THE COURT:  It's very narrow, okay.  And so with that,

19   I'm going to direct you to just have a word, very quickly, with

20   Mr. Ignacio and --

21         MR. IGNACIO:  And I appreciate that, Your Honor, but I

22   also ask that I be given a privilege to cut him off as well.

23         THE COURT:  Yeah.  Oh, yeah, certainly.

24         MR. IGNACIO:  Thank you.

25         THE COURT:  That's quite all right.

1            MR. IGNACIO:  Okay.

2        (Counsel and Defendant confer)

3            THE DEFENDANT:  I didn't resist.  If I resist, people

4   would haves got hurt.  They did not get hurt.  They did not get

5   hurt.

6            MR. IGNACIO:  Is that all you wanted to say?

7            THE DEFENDANT:  He's saying I resisted, I did not

8   resist.

9            MR. IGNACIO:  Okay.

10           THE DEFENDANT:  If I resisted, they would get hurt.

11           MR. IGNACIO:  All right.

12           THE DEFENDANT:  Honest.

13           MR. IGNACIO:  That's all you want to say?

14           THE DEFENDANT:  Yeah.

15           MR. IGNACIO:  Okay.

16           So, Your Honor, it was heard in open court.  The only

17  thing he wants to say is that he denies that he resisted.

18           THE COURT:  Okay.  All right.  Is that correct, Mr.

19  Kinney?

20           THE DEFENDANT:  Yes, sir.

21           THE COURT:  Okay.  All right.  Thank you very much.

22           All right.  With that, the Court has carefully

23  considered the merits of the motion that is before the Court and

24  that's, one, essentially to revisit and reopen the issue of

25  detention; and, two, order that Mr. Kinney be released on the

1   proposed plan, which is essentially to release him to the care,

2   and custody, and supervision of his mother.

3         THE DEFENDANT:  Thank you, sir.

4         THE COURT:  No, I haven't made a decision yet, Mr.

5   Kinney.  Okay.

6         To the extent that you should be thankful, Mr. Kinney,

7   that, one, Mr. Ignacio has brought the motion, because it's

8   important that he does that.  Number two, that your mom is

9   willing to step up and serve as a custodian, which means that she

10  would have to be responsible for you.

11        And in order for me to make a decision about this, I

12  have to be -- and if I were to agree with you, and I'm not saying

13  I am, but if I were to, I need to be crystal clear and confident

14  that the conditions that I would consider releasing you on are

15  adequate --

16        THE DEFENDANT:  Right.

17        THE COURT:  -- all right, to make sure that you show up

18  in court when you're supposed to, and that you're not going to

19  pose a danger to everybody.  The context within which this case

20  or this motion is being decided and this -- taking the

21  prosecution are very concerning.  These are serious charges, and

22  you have every right to fight those charges.

23        There's allegations involving a number of complainants.

24  Some of them, folks in public office.  And that status does not

25  sway the Court just by that, at all.  But to the extent that it's

1    a circumstance within the factual backdrop of this case, that's

2    one that the Court takes notice of.

3           Now in looking at whether or not your release on

4    conditions is appropriate, I have to look at a number of

5    different factors, the nature and circumstances of the charged

6    offenses.  And to the extent it involves crimes of violence,

7    that's a problem, okay.  It's not like you stole a T.V.  That's

8    not the allegation.  There were threats alleged against more than

9    one individual.  That's a factor I have to consider.

10          THE DEFENDANT:  Advocating.

11          THE COURT:  I'm not adjudging you guilty.

12          THE COURT:  Advocating, right.

13          THE COURT:  Hold on.  Hold on.  Your day in court to

14   decide whether you're guilty or not guilty is for another day,

15   not for today.  But it's a factor I have to look at, okay.  The

16   weight of the evidence against you, okay.

17          And while that's the least important factor that the

18   Court has to consider, because it's somewhat subjective at this

19   point, but, you know -- and even if I don't place a ton of weight

20   on that, I have to look at things such as the history and

21   characteristics of you as an individual.  If I look you in the

22   eye, am I going to be confident you're going to follow the rules?

23          And I'll just be straight with you, Mr. Kinney, I don't

24   know you from atom, but I am a bit troubled by whether or not you

25   actually are going to do what you say you're going to do, okay.

```
 1   You were here last time --

 2             THE DEFENDANT:  I promise, sir.

 3             THE COURT:  Okay.  I understand.  I understand.

 4             THE DEFENDANT:  I'm not a flight risk.

 5             THE COURT:  Okay.  I understand.  Hold on.  But I don't

 6   know you, so I don't know whether or not you mean what you say.

 7   Alls I can do is look at some of the statements and other things

 8   that I have to consider.  And, previously, you've challenged the

 9   jurisdiction of the Court saying, look, I'm not subject to

10   federal law.  You got no authority over me.  I ain't going to

11   follow your rules.

12             THE DEFENDANT:  I'm fighting Mike Miske.  Like a

13   person --

14             THE COURT:  Hold on.  Hold on.

15             And so what I'm saying is I have to look at that

16   because anyone that's released, okay, the only way those rules

17   matter is if they're followed to the T.

18             THE DEFENDANT:  Yes, sir.

19             THE COURT:  That's to the individual's credit and for

20   their protection, but also for the greater protection of the

21   public, as well as the integrity of the judicial process that

22   you're going through.

23             All right.  I look at various things to include your

24   prior comments about marijuana use, I talked to Mr. Ignacio

25   about.  And he's characterizing, and I think it's fair, look, I
```

```
 1  said a lot of things.  I really didn't mean them.  If you cut me
 2  loose, Judge, and put me on conditions I'm going to follow,
 3  promise.
 4              THE DEFENDANT:  Yes.
 5              THE COURT:  That's what I got out of that.
 6              THE DEFENDANT:  Yes, sir.
 7              THE COURT:  And I'm taking that, you know, for what
 8  it's worth, but I don't blindly dismiss all the other concern.
 9              Beyond your prior criminal conduct, which is, as far as
10  a record of convictions, that's not a huge concern, but this
11  separate matter that Mr. Nolan shared and that Mr. Ignacio talked
12  about, that's left for another day as well.  That is something
13  that gets my attention.
14              And so when I look at everything, Mr. Kinney, I am
15  going to respectfully adopt the recommendation of Pretrial
16  Services at this time and deny the motion.  And it's not because
17  I'm doing this, you know, as a quick sort of a decision.  I went
18  through and considered all the various factors, and I've taken a
19  little bit of time to talk to you because I want you to make
20  sure --
21              THE DEFENDANT:  I insist --
22              THE COURT:  Sit down.
23              THE DEFENDANT:  -- on giving you this --
24              THE COURT:  Sit down.
25              THE DEFENDANT:  -- sir.
```

```
 1              THE COURT:  Sit down.

 2              THE DEFENDANT:  This is my bond.

 3              THE COURT:  No, no, hold on.

 4              THE DEFENDANT:  This is my bond.

 5              THE COURT:  Okay.  Okay.  So I'm going to deny the

 6   motion.  I'm going to find that there's no condition or

 7   combination of conditions that are going to be adequate to

 8   reasonably assure your presence in court.  And while that is one

 9   factor, the biggest factor that I'm hanging my hat on for this

10   ruling, Mr. Kinney, is that -- that whether any conditions can be

11   set that are going to mitigate, and manage, and prevent you from

12   being a risk of harm to others individuals.  I can't say that

13   with any sort of confidence today.

14              Now given that, detention is appropriate.  And I will

15   direct you, Mr. Nolan, to please prepare an appropriate order and

16   incorporate findings based upon the Court's oral ruling.  It also

17   is further supported by information contained in the Pretrial

18   Services report and the additional documents by counsel.

19              All right.  And so with that, the motion is denied.

20   Okay.  With that is there anything else, Mr. Nolan?

21              MR. NOLAN:  No, Your Honor.

22              THE DEFENDANT:  I would like to speak, sir.

23              THE COURT:  No, no.

24              THE DEFENDANT:  Yes.

25              THE COURT:  Mr. Ignacio.
```

1          MR. IGNACIO:  Nothing further, Your Honor.

2          THE DEFENDANT:  I insist on giving you this.  This is a

3  -- this is a doc.

4          THE COURT:  I know.  Talk to --

5          THE DEFENDANT:  I want this directly to go to you, sir.

6          THE COURT:  Okay.  Talk to Mr. Ignacio.

7          THE DEFENDANT:  For the record.  For the record.

8          THE COURT:  All right.  We'll stand in recess.

9          THE DEFENDANT:  For the record, sir.

10          MR. IGNACIO:  I'm not going to engage in that, okay.

11          THE COURT:  We'll stand in recess.

12          MR. IGNACIO:  It's not appropriate.

13          THE DEFENDANT:  I insist on giving this to you, sir.

14          THE CLERK:  Court stands in recess.

15       (Proceedings concluded at 11:00 a.m.)

16

17

18

19

20

21

22

23

24

25

CERTIFICATE

I, Jessica B. Cahill, court approved transcriber, do hereby certify that pursuant to 28 U.S.C. §753, the foregoing is a complete, true, and correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Dated: September 17, 2022

Jessica B. Cahill, CER/CET-708