CLARE E. CONNORS #7936
United States Attorney
District of Hawaii

CRAIG S. NOLAN
Assistant U.S. Attorney
Room 6100, PJKK Federal Building
300 Ala Moana Blvd.
Honolulu, Hawaii 96850
Telephone: (808) 541-2850
Facsimile: (808) 541-2958
E-mail: Craig.Nolan@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CR. NO. 22-00031 DKW |
| Plaintiff, | ) GOVERNMENT'S OPPOSITION TO |
| vs. | ) MOTION TO SUPPRESS; |
| | ) DECLARATION OF COUNSEL; |
| LINDSEY KINNEY, | ) CERTIFICATE OF SERVICE |
| Defendant. | ) |

**GOVERNMENT'S OPPOSITION TO MOTION TO SUPPRESS**

## TABLE OF CONTENTS

BACKGROUND ……………………………………………………………………...1

ARGUMENT ……………………………………………………………………….5

I. The Warrant Is Sufficiently Particular ……………………………………….6

II. The Warrant Is Not Overbroad ……………………………………………….10

III. Suppression Would Not Be Warranted If the Warrant Were Invalid ………..13

CONCLUSION …………………………………………………………………..15

i

# TABLE OF AUTHORITIES

Cases

*United States v. Calandra*, 414 U.S. 338, 94 S.Ct. 613 (1974) …………………..13

*Dalia v. United States*, 441 U.S. 238 (1979) ………………………………………11, 12

*Herring v. United States*, 555 U.S. 135, 129 S.Ct. 695 (2009) …………………..13

*United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405 (1984) …………...………13, 14

*United States v. Aboshady*, 951 F.3d 1 (1st Cir. 2020) ……………………………….8

*United States v. Adjani*, 452 F.3d 1140 (9th Cir. 2006) ……………….....……...12

*United States v. Comprehensive Drug Testing, Inc.*,
621 F.3d 1162 (9th Cir. 2010) (en banc) ……………...………………….11, 12, 13

*United States v. Crews*, 502 F.3d 1136 (9th Cir. 2007) …………………………..14

*United States v. Flores*, 802 F.3d 1028 (9th Cir. 2015) ………………..……11, 13

*United States v. Fries*, 781 F.3d 1137 (9th Cir. 2015) …………….….………..10

*United States v. Hill*, 459 F.3d 966 (9th Cir. 2006) ………..……………..7, 11

*United States v. McLaughlin*, 851 F.2d 283 (9th Cir. 1988) ………………………8

*United States v. Schesso*, 730 F.3d 1040, 1049-50 (9th Cir. 2013) ………....….12

*United States v. SDI Future Health, Inc.*, 568 F.3d 684 (9th Cir. 2009) ….....…7, 14

*United States v. Towne*, 997 F.2d 537 (9th Cir. 1993) ………………………….6, 7

*United States v. Vesikuru*, 314 F.3d 1116 (9th Cir. 2002) ………………….....…7

*In re Search of Google Email*, 92 F.Supp.3d 944 (D. Alaska 2015) ……………..10

Statutes/Rules

18 U.S.C. § 875(c) ………………………………………….…………*passim*

Fed. R. Crim P. 41(b) ………………………………………………………13

The United States of America, by and through the undersigned attorneys, hereby opposes defendant's Motion to Suppress (ECF No. 53), which challenges the particularity and breadth of the search warrant issued by the Court for, among other things, defendant's cellphone. Significantly, the motion does not contest the Magistrate Judge's finding that probable cause existed to issue the warrant or argue that the government seized items beyond the scope of the warrant. Instead, defendant mischaracterizes the scope of the warrant, relies on non-binding *dicta* in a concurring appellate opinion, and otherwise misconstrues the relevant facts and applicable law. As a result and because the warrant and application comply with applicable law, the motion should be denied.

## BACKGROUND

On April 12, 2022, United States Magistrate Judge Rom Trader granted a warrant to search the person of defendant "including the following on his person or within his immediate control: documents and identification; digital devices such as cell phones . . . including the cell phone assigned call number [(XXX) XXX]-3006; and other containers." Ex.1.[1] In Attachment B to the warrant, Judge Trader authorized seizure of:

---

[1] Exhibit 1 is a redacted version of the returned warrant; Exhibit 2 is a redacted version of the application (with incorporated affidavit). These documents were unsealed in 22-mj-00521 RT by the Court in redacted form on November 15, 2022. As a result, this Opposition is not filed under seal, and in the government's view, defendant's Motion to Suppress may be unsealed after the redacted documents are substituted for defendant's Appendix A. Among the redacted

1

   All evidence of violations of 18 U.S.C. § 875(c) by Lindsey KINNEY or others yet to be identified individuals, including:

>   1. Digital devices such as cell phones, computers, tablets, and digital storage media and devices (such as hard drives, thumb drives, DVD's, CDs, and SD cards), including the cell phone assigned call number [(XXX) XXX]-3006, all of which pursuant to this warrant may be searched for evidence, fruits and instrumentalities of violations of 18 U.S.C. § 875(c) by Lindsey KINNEY, and evidence of how the digital device was used, the purpose of its use, who used it, and when; and
>
>   2. Documents and identification which may be used to positively identify the carrier of said documents and devices.

Ex. 1; *see also* Ex. 2 (Attachment B to Application and Affidavit).

The affidavit describes, *inter alia*, (1) the affiant-agent's training and experience at the Federal Bureau of Investigation (FBI), (2) the basis for his statements, and (3) the facts constituting probable cause to believe (a) defendant had made via multiple Instagram accounts multiple interstate threats to injure multiple other persons, in violation of 18 U.S.C. § 875(c), and that an unidentified person had joined in one of the threats, and (b) evidence of the violations would be found on defendant's cellphone. In establishing probable cause, the affiant described a January 5, 2022 encounter between Victim 1 (along with colleagues) and an associate of defendant ("Associate 1"), during which Associate 1 acted in a hostile manner toward Victim 1, who was lawfully executing the duties of his state

---

text are the area code and prefix of defendant's cellphone number, and therefor Xs are used in place of those numbers in this Opposition.

government job. Ex. 1 ¶¶ 5-8. The affiant explained further that Associate 1 solicited via his Facebook account the names and home addresses of Victim 1 and his colleagues, *id.* ¶ 9, and that defendant is a member of a self-styled military organization ("Group 1") led by Associate 1, *id.* ¶5. The affiant then described in detail defendant's January 17, 2022 threat to kill by beheading Victim 1, his wife ("Victim 2"), and his close friend ("Victim 3"), *id.* ¶¶ 10-17, 20, and that the Court had issued a Criminal Complaint and Arrest Warrant for defendant based on these same violations, *id.* ¶ 21. The affiant also described in detail defendant's March 28, 2022 interstate threat via a second Instagram account belonging to defendant to kill Victims 4 and 5. *Id.* ¶ 22. (This second violation of § 875(c) was not charged in the Criminal Complaint, but is charged in Count 2 of the Superseding Indictment.)

In describing evidence of defendant's criminal conduct, the affiant recounted that Victim 1 told the FBI that he believed defendant's threat was in retaliation for carrying out his official duties on January 5, 2022 with respect to Associate 1, and that Victim 1 believed that defendant was a contract killer associated with Michael Miske (a racketeering and murder defendant before this Court at the time of the threat and continuing to the present). *Id.* ¶ 10. The affiant quoted from the threat to behead Victims 1-3 on defendant's Instagram account and explained that defendant's threat incorporated, *inter alia*, written posts and comments by

3

defendant, a videorecording with audible statements by defendant, screenshots of the Facebook profiles and photos of Victims 1-3, a screenshot of an apparent Apple iMessage (which is similar to a text), and a photograph of a work predecessor of Victim 1. *Id.* ¶¶ 10, 12, 14, 15. The affiant stated that Victim 2 told FBI that she had seen the threat in modified form reposted to defendant's second Instagram account. *Id.* ¶ 12. The affiant also detailed and quoted from another post by defendant on his first Instagram account directed more broadly at government employees and containing threatening language (e.g., "come meet your maker..I'll show u who he is") and accusations of child trafficking and bribery. *Id.* ¶¶ 16-17.

With regard to defendant's March 28, 2022 threat to Victims 4 and 5 and to security staff for Victim 4, the affiant explained that threat was contained in a video of defendant posted to his second Instagram account that included audible statements by defendant and a second man who was not visible. *Id.* ¶ 22. The affiant quoted from the video, excerpting defendant's statements about sending Victims 4 and 5 back to New York "one way or another" and "cut[ting] their heads off right in the fucking palace for treason and human trafficking"; defendant's statements about striking the jaws/heads of Victim 4's security staff; and the offscreen man's statement about hanging Victims 4 and 5. *Id.*

4

The affiant wrote that defendant had used "various Instagram accounts," including the two identified in the affidavit, on January 17, 2022 and "on other occasions," including March 28, 2022 to threaten "beheading and other apparent acts of violence." *Id.* ¶ 25. The affiant explained that defendant "regularly posts to social media," and that the affiant knew from his training and experience that "many recordings and streaming events posted to social media by individuals occurs through the use of a cell phone." *Id.* The affiant then went on to describe in detail the types of data stored on cellphones, including multiple types of communications consistent with the detailed description of defendant's threats, that constitutes evidence of § 875(c) crimes described in the affidavit and "evidence that establishes how the digital devices were used, the purpose of use, the identities of the users, and the timing of use" in connection with the crimes. *Id.* ¶¶ 26, 27.

In conclusion, the affiant averred that probable cause existed that (1) between approximately January 17, 2022 and March 28, 2022, defendant violated § 875(c) by posting on Instagram threatening communications to injure others, and (2) "evidence of these violations" would be found on, *inter alia*, defendant's cellphone. *Id.* ¶ 31.

## ARGUMENT

The warrant issued by Judge Trader upon the sworn application of the affiant permits the search of defendant's cellphone and the seizure **only** of

5

"evidence of violations of . . . § 875(c) by [defendant] or other[] yet to be identified individuals, including . . . evidence of how the digital device was used, the purpose of its use, who used it, and when[.]" Ex. 1 (Attachment B). That limitation severely limits the amount and type of data that the government may seize from the cellphone, and by its own terms narrows the seizure of how/why/who/when data to evidence connected to § 875(c) crimes. Although Attachment B is sufficiently particular, the affidavit—which as a matter of law is incorporated into the warrant—provides great detail on the types of data that constitute evidence of § 875(c) crimes. Further, because the warrant limits seizure to evidence of § 875(c) crimes, the warrant is not overbroad. Tellingly, defendant does not identify a single piece of evidence seized from the cellphone for which probable cause is lacking.

    I. <u>The Warrant Is Sufficiently Particular.</u>

The Fourth Amendment requires that search warrants be specific. "Specificity has two aspects: particularity and breadth. Particularity is the requirement that a warrant must clearly state what is sought. Breadth deals with the requirement that the scope of the warrant be limited by the probable cause on which the warrant is based." *United States v. Towne*, 997 F.2d 537, 544 (9th Cir. 1993) (internal quotation marks and citations omitted). A warrant's description of items needs to be only "reasonably specific, rather than elaborately detailed."

*United States v. Hill*, 459 F.3d 966, 973 (9th Cir. 2006). The level of specificity required "varies depending on the circumstances of the case and the type of items involved." *Id.* In the Ninth Circuit the affidavit is incorporated into the warrant by virtue of the boilerplate language appearing on the pre-printed AO 93C form search warrant that "[the signing judge] find[s] that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described" in the warrant. *See United States v. SDI Future Health, Inc.*, 568 F.3d 684, 699 (9th Cir. 2009); *United States v. Vesikuru*, 314 F.3d 1116, 1121 (9th Cir. 2002); *Towne*, 997 F.2d at 545. Further, an affidavit "accompanie[s] the warrant" where the affidavit is made available to the agents executing the search warrant, i.e., that the officers could access the affidavit during the search, though importantly, "actual reliance on [the] affidavit" is not required. *SDI Future Health, Inc.*, 568 F.3d at 701. Here, no dispute exists that the affiant was one of two FBI agents executing the warrant and therefore knew its contents, the agents reviewed the data extracted from the phone using specialized software and computer equipment possessed by the FBI over a period of months, and the agents had at least electronic access to the affidavit, which the Court provided to them via email on the day the warrant was issued. *See* Ex. 3; Def's App. B.

Defendant does not contest as a general matter that probable cause existed to seize his cellphone and search for evidence of § 875(c) crimes. Instead, defendant

focuses much of his argument on Attachment B's authorization of seizure of "evidence of how the digital device was used, the purpose of its use, who used it, and when." Ex. 1. The factual premise for his argument is, however, wrong. Attachment B authorizes seizure of such data only where such data is evidence of a § 875(c) crime because that language is **<u>a subset</u>** of the broader category of "evidence of violations of . . . § 875(c)." Ex. 1.  Therefore, any such data must relate to commission of § 875(c) violations, evidence that tends to prove such violations, evidence of the identity of the person committing such violations, use or possession of the phone in connection with any of the foregoing, or defendant's ownership, possession or control of the phone.  For example, data that demonstrated that the phone was used to unlawfully distribute controlled substances would not be subject to seizure based on the warrant and affidavit unless that distribution had some nexus to § 875(c) crimes, e.g., the threat crime occurred in connection with the drug crime.  Further, to the extent that defendant argues that evidence of ownership or possession of the cellphone cannot be seized, the law is clear that "[a] search warrant may be used, not only to gather evidence of a criminal activity, but also to gather evidence of who controlled the premises suspected of connection with criminal acts." *United States v. McLaughlin*, 851 F.2d 283, 286 (9th Cir. 1988); *see United States v. Aboshady*, 951 F.3d 1, 8 (1st Cir. 2020) (upholding seizure of email containing extremely sensitive personal

information unrelated to healthcare fraud because the evidence "helped to demonstrate that the email account that was alleged to be [defendant's] was in his control.").

The warrant and affidavit also set forth objective criteria for determining what to seize. Significantly, Attachment B limits seizure to evidence of violations of § 875(c). Unlike conspiracy, fraud, and many other offenses, § 875(c) criminalizes very discrete conduct—sending across state lines or international boundaries a threat to injure (or kidnap) any person. What constitutes evidence of that crime is self-evident. Specifying in Attachment B that agents may seize data—which are the only contents of a cellphone other than hardware components—constituting or relating to threats or the transmission of threats does nothing more to guide or limit the executing agent's discretion. Furthermore, the type of evidence to be seized is further elucidated by the affidavit's detailed description of defendant's § 875(c) offenses, including: the content of his threats including the types of physical harm to be inflicted and the use of weapons to achieve defendant's goals; the form of his threats including the use of social media and the Internet to formulate and transmit his threats; the identities of the Victims; and defendant's apparent motives for his threats including Victim 1's interaction with Associate 1, defendant's apparent dislike of the exercise of government

power, and defendant's apparent beliefs that the specific Victims and government employees in general are corrupt and engaged in human trafficking.

Given the discrete and concrete nature of the criminal offense at issue, the express language of Attachment B as to the scope of the items to be seized, and the details included in the affidavit, the warrant meets the particularity requirement of the Fourth Amendment.

## II. The Warrant Is Not Overbroad.

The breadth requirement functions to "limit the scope of the search warrant by the probable cause on which the warrant is based." *United States v. Fries*, 781 F.3d 1137, 1151 (9th Cir. 2015). The overbreadth analysis asks the Court to assess whether the proposed warrant limits the government's search to the specific places that must be inspected to confirm or dispel the suspicion that gave rise to probable cause and the government's seizure to items supported by probable cause. *In re Search of Google Email*, 92 F.Supp.3d 944, 950 (D. Alaska 2015).

Because the warrant limits seizure to evidence of § 875(c) crimes, the warrant is not overbroad. As explained above, the affidavit established probable cause that defendant committed at least two § 875(c) crimes, that he had been charged for the first of the two specific threat crimes described in the affidavit, and that evidence of those crimes would be found on his cellphone, and the affidavit

describes in great detail those crimes, the types of data employed in committing those crimes, and the context and apparent motives for those crimes.

Rather than making a true overbreadth argument, defendant uses this section of his motion to complain about the nature of digital device searches and to advocate for a wish list of restrictions on the manner of execution of warrants for such devices. The Ninth Circuit has recognized a legitimate law enforcement need to scoop up large quantities of data and sift through it carefully for concealed or disguised pieces of evidence. *See, e.g., Hill*, 459 F.3d at 973. Within the context of electronic evidence, purported over-seizing "is an accepted reality in electronic searching because there is no way to be sure exactly what an electronic file contains without somehow examining its content." *United States v. Flores*, 802 F.3d 1028, 1044-45 (9th Cir. 2015) (quoting *United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162, 1177 (9th Cir. 2010) (en banc)).

The Fourth Amendment's particularity and overbreadth requirements do not extend to the manner of executing a search warrant. As the Supreme Court has held, the Fourth Amendment "specifies only two matters that must be 'particularly describ[ed]' in the warrant: 'the place to be searched' and 'the persons or things to be seized.'" *United States v. Grubbs*, 547 U.S. 90, 97 (2006). The Court has "rejected efforts to expand the scope of [the Particularity Clause] to embrace unenumerated matters." *Id.* In *Dalia v. United States*, 441 U.S. 238 (1979), the

Supreme Court held that officers executing a Title III order authorizing interception of oral communications acted reasonably when they made a surreptitious entry to install an electronic bug even though the Title III order did not authorize the covert entry. The Court held that "[n]othing in the language of the Constitution or in [the Supreme] Court's decisions interpreting that language suggests that . . . search warrants also must include a specification of the precise manner in which they are to be executed." *Id.* at 257. The Court further recognized that executing officers "may find it necessary to interfere with privacy rights not explicitly considered by the judge who issued the warrant" and that "the details of how best to proceed with the performance of a search authorized by warrant" are "generally left to the discretion of the executing officers." *Id.* The fact that a warrant need not specify its manner of execution, however, does not mean that the Fourth Amendment does not constrain how a warrant is executed. Instead, the "manner in which a warrant is executed is subject to later judicial review as to its reasonableness." *Dalia*, 441 U.S. at 258.

  Defendant's reliance on the **concurring** opinion in *United States v. Comprehensive Drug Testing* is misplaced; its suggested limitations on the manner in which warrants are executed are not binding. As explained in *United States v. Schesso*, 730 F.3d 1040, 1049-50 (9th Cir. 2013), search warrant protocols are not mandatory in the Ninth Circuit. *See also United States v. Adjani*, 452 F.3d 1140,

12

1150 (9th Cir. 2006) (recognizing that courts are hesitant to narrow search protocols for digital information because digital files are easy to disguise or rename, and evidence could escape discovery). Further, contrary to defendant's suggestion, Ninth Circuit law does not prohibit the participation of the government's investigative team, including attorneys and staff, from participating in data segregation. *See Comprehensive Drug Testing*, 621 F.3d at 1180 (Kozinski, J., concurring); *Flores*, 802 F.3d at 1045; *see also* Fed. R. Crim P. 41(b) (providing that a federal law enforcement officer or an attorney for the government may request a search warrant).

    III.  <u>Suppression Would Not Be Warranted If the Warrant Were Invalid.</u>

Although the warrant comports with the Constitution, none of the alleged infirmities would be a basis for suppression. "The fact that a Fourth Amendment violation occurred—i.e., that a search or arrest was unreasonable—does not necessarily mean that the exclusionary rule applies." *Herring v. United States*, 555 U.S. 135, 141, 129 S.Ct. 695 (2009). Because the exclusionary rule serves "to safeguard Fourth Amendment rights generally through its deterrent effect," *United States v. Calandra*, 414 U.S. 338, 348, 94 S.Ct. 613 (1974), it "applies only where it 'result[s] in appreciable deterrence,'" *Herring v. United States*, 555 U.S. 135, 141, 129 S.Ct. 695 (2009) (quoting *United States v. Leon*, 468 U.S. 897, 909, 104 S.Ct. 3405 (1984)). Courts therefore do not view exclusion as "a necessary

consequence," but rather "focus[ ] on the efficacy of the rule in deterring Fourth Amendment violations in the future." *See id.*

Where a court finds a warrant not sufficiently particular or overbroad, the government's good faith reliance on a court's decision to issue the warrant will preclude the remedy of suppression except "where the warrant is facially deficient in detail as to the place to be searched or the things to be found that the officers could not reasonably presume it to be valid." *United States v. Crews*, 502 F.3d 1130, 1136 (9th Cir. 2007). For the reasons articulated above, defendant's assertions regarding the warrant, which he invokes again in an attempt to vitiate the good faith reliance on the warrant by the FBI agents, should be rejected. In making his good faith arguments, defendant reiterates his mischaracterization of the express language of Attachment B, ignores the nature of the crime at issue, fails to consider the content of the affidavit, seeks to restrict the role of government attorneys in contravention of the law, and lobbies again for his wish list of restrictions on the manner of execution of warrants. The warrant was not facially deficient and certainly not to the extent that the agents' reliance on the warrant was not "objectively reasonable." *SDI Future Health*, Inc., 568 F.3d at 706 (internal quotation marks omitted).

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court deny defendant's Motion to Suppress.

DATED: November 15, 2022, at Honolulu, Hawaii.

> CLARE E. CONNORS
> United States Attorney
> District of Hawaii
>
> By: */s/ Craig S. Nolan*
>     Craig S. Nolan
>     Assistant U.S. Attorney

## **CERTIFICATE OF SERVICE**

I hereby certify that, on the date and by the method of service noted below, the true and correct copy of the foregoing was served on the following at their last known address:

Served Electronically by CM/ECF:

Cassandra Stamm, Esq.
Attorney for Defendant
LINDSEY KINNEY

DATED: November 15, 2022, at Honolulu, Hawaii.

/s/ *Craig S. Nolan*
Craig S. Nolan
Assistant U.S. Attorney

16