# EXHIBIT 2

AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means



**SEALED**

**BY ORDER OF THE COURT**

## UNITED STATES DISTRICT COURT

for the

District of Hawaii

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII
**Apr 12, 2022**
Pam Hartman Beyer, Clerk of Court

In the Matter of the Search of

*(Briefly describe the property to be searched
or identify the person by name and address)*

THE PERSON OF LINDSEY KINNEY,
aka "Cowboy."

)
)
)
)
)

Case No. Mag. No. 22-521 RT

### APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A,

located in the _____ District of _____ Hawaii _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC § 875(c) | Interstate Transmission of Threat to Injure the Person of Another |

The application is based on these facts:

See Attached Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under
18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Wyatt Tackett, Special Agent, FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone _____ *(specify reliable electronic means)*.

Date: April 12, 2022

City and state: Honolulu, Hawaii



Rom A. Trader
United States Magistrate Judge

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE PERSON OF LINDSEY KINNEY, aka "Cowboy." | Mag. No. 22- 521 RT |

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, Wyatt Tackett, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant under Rule 41 of the Federal Rules of Criminal Procedure to search the person of Lindsey KINNEY, aka "Cowboy," as further described in Attachment A, for the things described in Attachment B.

2.      I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been since March of 2019.  During my training at the FBI Academy in Quantico, Virginia, I received instruction in a variety of investigative and legal matters, including the topics of Fourth Amendment searches and seizure, the drafting of search warrant affidavits, and requisite probable cause.  I am presently assigned to the Joint Terrorism Task Force – Pacific (JTTF-P), where I work a variety of criminal and national security matters including international and domestic terrorism.  I have utilized court-authorized search warrants, conducted physical surveillance, and interviewed subjects and witnesses.  I have also been

trained in the collection and analysis of digital evidence, to include evidence obtained from computers, cell phones, cell phone providers, and internet service providers. As a federal agent, I am authorized to investigate violations of the laws of the United States, and I am a law enforcement officer with the authority to execute search and arrest warrants under the authority of the United States. Due to my training and experience as an FBI Special Agent, I am familiar with the United States Criminal Code.

3.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, law enforcement personnel, and witnesses. This affidavit is intended to show only that there is probable cause for the specified violations of federal law and the presence of evidence of those violations on the person and property described in Attachment A, and does not set forth all of my knowledge about this matter.

4.     Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that KINNEY has violated 18 U.S.C. § 875(c), which prohibits, "transmit[ting] in interstate or foreign commerce any communication containing . . . any threat to injure the person of another," by making public written and oral threats on a social media platform to kill multiple people. There is also probable cause to search the person and property described in

2

Attachment A for evidence, instrumentalities, contraband, and/or fruits of these crimes further described in Attachment B.

## PROBABLE CAUSE

### January 5, 2022 Encounter Between an Associate of KINNEY and Victim 1/DLNR Employees

5.      Based on an FBI investigation and information obtained from social media postings by KINNEY and others, law enforcement personnel, victims, and witnesses, I know that KINNEY characterizes himself as a member of a group of persons who identify themselves by military titles/ranks, describe their efforts as "operations," don military uniforms, carry illegitimate military documents, and state they are part of a military organization ("Group 1").  Investigation has revealed that Group 1 is led by a person using an alias and purporting to hold the rank of colonel in Group 1 ("Associate 1").

6.      Based on reporting from the State of Hawaii Department of Land and Natural Resources (DLNR), Associate 1 has been using a boat ("Vessel") as a residence and means of transportation among the Hawaiian Islands. The DLNR's Division of Conservation and Resources Enforcement (DOCARE) reports that Associate 1 owes the State of Hawaii approximately $30,000 resulting from non-payment of mooring fees due to his unauthorized mooring of the Vessel in State Small Boat Harbors, and disposal and demolition fees for a sailboat Associate 1

formerly owned, which was impounded by DLNR's Division of Boating and Ocean Recreation (DOBOR).

7.     Victim 1 is an employee of DLNR and was acting in his official capacity as the Waianae Small Boat Harbor Master when he first approached Associate 1 on or about January 2, 2022 to verbally warn Associate 1 that he could not keep the Vessel at the Harbor because Associate 1 was not following the mandated guidelines. Acting on behalf of DLNR, on January 5, 2022, Victim 1 served Associate 1 while Associate 1 was operating the Vessel a written warning to vacate the area or be subject to citation.

8.     Victim 2 is the spouse of Victim 1, and saved a Facebook live stream posted by Associate 1 that documented the January 5, 2022 encounter between Associate 1 and DLNR, including Victim 1.  I have viewed the entirety of that post, which was a live stream by Associate 1 that captured approximately five minutes and 27 seconds of the encounter and depicts, among other things, the following:

       a.     When the DLNR officials, including Victim 1, approached the Vessel and advised Associate 1 they were going to provide him a written notice, Associate 1 stated he did not care because he was already underway. As the officials approached the Vessel and attempted to provide the written notice, Associate 1 became increasingly aggravated. Associate 1 began yelling that the

4

officials cannot provide him the written notice while his vessel is underway. During the interaction, Associate 1 acted hostile towards the officials and called them derogatory names to include "fucking traitor."

      b.    At approximately one minute and 48 seconds into the stream, Associate 1 called the United States Coast Guard (USCG), stating, "we have an armed engagement." After the transmission to the USCG, Associate 1 stated, "come on, come on. Yeah, yeah, yeah, no, no, no, I get all you guys huh. especially you." At this point, indistinct voices in the background can be heard until approximately two minutes and 41 seconds into the stream when Associate 1 stated, "Fucking guys."

      c.    As the recorded stream proceeds, Associate 1 continued to go back and forth between yelling at Victim 1 and the other officials, and transmitting his location and instructions to USCG. During the interaction, Associate 1 articulated that he believed the officials were armed and stated, "Oh cuz, you come in here armed, roger dodger, yeah roger, you do you're fucked."

    9.    Following the January 5, 2022 encounter, in a video posted to his Facebook page, Associate 1 asked his followers to identify the names and residences of the state employees captured on his January 5, 2022 video, which included Victim 1.

**KINNEY's Threats to Victims 1-3**

10.     On January 17, 2022, Victim 1 contacted the Honolulu Police

Department (HPD) and the FBI National Threat Operations Center (NTOC) to

report that on January 17, 2022 at approximately 12:00 p.m., KINNEY made

threats, which were posted to KINNEY's Instagram page, later identified by agents

to be @CANT.STOP.COWBOY, to cut off the heads of Victims 1-3 and take the

Victims to the "gates," and posted the social media profiles of Victims 1 and 2, and

of Victim 3, who is a close friend of Victims 1 and 2.  Victim 1 explained that

KINNEY is a member of Group 1 and posted his family's profiles because Victim

1, acting in his official capacity as the Waianae Small Boat Harbor Master

employee of DLNR, was involved in the encounter with Associate 1 on January 5,

2022.  Victim 1 stated that he believed KINNEY is a contract killer based on

media reports about KINNEY's prior involvement with Michael Miske, who I

know is charged in the District of Hawaii with racketeering and related crimes,

including murder, as has been widely reported in the media.

11.     On January 20, 2022, Victim 2 (the spouse of Victim 1) told the FBI

that she was informed from a friend that Associate 1 posted videos on his

Facebook page stating he was coming to Victim 1's house to retrieve his

purportedly stolen property.  Victim 2 stated that Associate 1 previously asked the

public via social media for Victim 1's personal information, including his home address.

12.     Victim 2 stated that subsequent to Associate 1's solicitation of personal information about Victim 1, KINNEY posted on his Instagram account @CANT.STOP.COWBOY, on January 17, 2022, the social media profile pictures of Victims 1-3 and made threats about cutting off the heads of Victims 1-3. According to Victim 2, after Victim 2 responded to KINNEY's posts, KINNEY created an Instagram account named @IOANDJUSTICE and reposted his threats about beheadings without including the profiles of Victims 1-3.

13.     On January 20, 2022, Victim 1 provided more information to the FBI that KINNEY subsequently posted a video stating that DLNR is part of a human trafficking ring, and that KINNEY will overthrow the Hawaiian government and then be king.

14.     Victims 1 and 2 provided the FBI with relevant screenshots and recordings of KINNEY's post to the public pages of his Instagram account @CANT.STOP.COWBOY containing threats to physically harm Victims 1-3.  I have reviewed those materials.  The threatening post includes multiple pages containing, among other things, a writing containing the threats to behead Victims 1-3; a video in which KINNEY addresses and/or references Victim 1 by his title "Harbor Master" and DLNR; the Facebook profiles of Victims 1-3; and a

screenshot of threatening messages that appear to be Apple iMessages. These items are more particularly described as follows:

      a.     Included throughout the multiple pages of the post is a writing by KINNEY on his Instagram "@CANT.STOP.COWBOY" account, stating:

> cant.stop.cowboy I will unite the 12 tribes once again..if it's the last thing I do..truth will come to light..why don't u sellouts come out of your..DUMB..tunnels..u know why u no like come out..shame..u..the one shaking in your boots and I have all the proof to open anyone's eyes what u see when u look in to my eyes fearless..nothing but truth love and justice u will see in these eyes shame on u for taking the envelope..**All of you will reap what you sow..I'm sending each and everyone of u to the gates for..TREASON..your heads are mines..u going to the gates headless..as our father is waiting for u all patiently..one way trip..Aloha"**

(emphasis added; emojis omitted; ellipses in original). Based on my review of the full post, including the portions described immediately below, numerous other social media posts by KINNEY to the @CANT.STOP.COWBOY" and "@IOANDJUSTICE" and by other members of Group 1, and my training and experience, I believe KINNEY is threatening Victims 1-3 that he will kill them by beheading and thereby send them to the afterlife.

      b.     On the first page of KINNEY's post, the written threat described above appears below a video in which KINNEY addresses "the Harbor Masters" and "DLNR" and about various topics. I know the individual speaking in the video is KINNEY because, among other things, I recognize him from known

photos of KINNEY contained in government records.  In the video, KINNEY states:

> You harbor fucking masters DLNR mother fuckers yeah? I see your fucking plans. I see your fucking move. Yeah? You trying to fucking make all the sovereignties fight one another yeah? Yeah? Am I right? Bitch boys? Huh? Why? Cause you fucking scared yeah? Yeah? All you fuckers scared yeah? All you DLNR fuckers. Yeah? Why you scared? Why you scared? Huh? Truth will come to light. Andwh-and all the-all the envelopes that Mike Miske [name of another individual] all these fucking human traffickers here. Yeah? All you fuckers. Yeah? You guys scared. What you guys scared of? You scared of us uniting as one and coming together and seeing past all you illu-your illusions and smoke and mirrors. [video replays in part] You harbor fucking masters DL—[video resumes] Smoke and mirrors. Right? [pause, nods head] When I-when I come back from Moloka'i I wanna meeting [pause] and I will come with truth, love, and justice. I want to know what like your guys like- what you guys choice is. That's what I like know. What you guys choice is. Huh? Huh? I like know. I know already. You guys gonna choose love, 'cause you guys don't want fucking justice. And you guys know, I've all the proof of all you fucking communist pricks taking ee-ohs [PH] children. My braddahs and sistahs. Selling them as slaves. Shame on you! Shame on you! [video replays in part] Smoke and mirrors.

  c. KINNEY's written threat quoted above in subparagraph (a) also appears in separate pages within Kinney's post, including, among others, the following:

    i. KINNEY's written threat is below a photograph of a former Waianae Small Boat Harbor Master along with a comment by someone identifying the person as the Harbor Master;

       ii.     KINNEY's written threat is below the Facebook profile of Victim 2, which is comprised of a photograph of Victim 2, a photograph of Victim 2 and the minor children of Victims 1 and 2, the name of Victim 2, and her mantra. According to Victim 2, KINNEY appears to have screenshotted her Facebook profile and that of Victims 1 and 3, and pasted those screenshots into individual pages of KINNEY's post;

       iii.     KINNEY's written threat is below the Facebook profile of Victim 3, which is comprised of a photograph of Victim 3 and another person, a second photograph, the name of Victim 3, the name of his college and his course of study, and the name of his high school. Pasted between the Facebook profile and the written post are two direct messages in right-sided blue bubbles that appear to be Apple iMessages by KINNEY (and screenshotted by KINNEY), stating:

       1.     "I'll happily meet them alone we see who come out with there head"; and

       2.  "After I take there heads I will be king"; and

       iv.     KINNEY's written threat is below the Facebook profile of Victim 1, which is comprised of a photograph of Victim 1, a second image, the name of Victim 1, and his mantra.

     15.     Victims 1 and 2 also provided a screenshot of a written post by KINNEY at his "@CANT.STOP.COWBOY" Instagram account in the

"comments" section to the threatening post described in the preceding paragraph.

KINNEY's post to the "comments" states:

> cant.stop.cowboy They like take down my shit..truth must hurt..when I come back..we can talk in person..I have a lot to say to u bitches on pay roll..I have all the time in the world..u the ones running out of time [hourglass imogi] do the pono thing or u bitches going feel my grandma wrath..tables has turned..to the death u bitches said..I'm king..one of many..all the kings will be put back where they belong..the ones with the true bloodline..real talk..your move bitches..I'm not fucking around..when I want a meeting I want a meeting..

16.     Victims 1 and 2 also provided a screenshot of a written post by KINNEY at his "@CANT.STOP.COWBOY" Instagram account appearing under a screenshot of an apparent iMessage, text message, or other direct message argument between KINNEY and another person.  The post states:

> cant.stop.cowboy Been going through this shit for 5 years..lmfao..Freemason bitches on pay roll..lmfao..they think they can kill me by playing with there key board..bitch boy..don't tempt me with a good time..not my first rodeo..let's dance..u know what go gather all your bitches on pay roll..come..I like see..we see who god is with..I challenged all u devil sons and daughters..let the games begin [three imogis] come meet your maker..I'll show u who he is..Little boy lovers..STFU..all u goin do is watch me walk on by..all u bitches have no game [chess pawn imogi] check mate [chess pawn imogi] I'm here to win this war not lose..no no no no u go first..bunch of bitches

17.     Based on my training and experience, as well as the investigation into KINNEY and Associate 1, I believe that KINNEY's references in his posts and

comments to "on pay roll" means government employees, including those at DLNR.

18.     When interviewed by the FBI, Victims 1 and 2 told agents that they felt threatened by the posts that KINNEY directed toward them, and took the threats seriously.  They were at their highest threat level, locked their outdoor gates, kept loaded firearms ready and staged at the front door, and rehearsed security procedures with their children due to the threats and KINNEY's association with Michael Miske.

19.     The FBI also interviewed Victim 3, who stated that he viewed the threat shortly after it was posted, and felt KINNEY was serious and would try to cut off his head and kill him.  As a result, Victim 3 enabled his video security system at his house after the threats from KINNEY.

20.     Based on my training and experience, and my investigation into this matter, I know that Victims 1-3 are residents of the State of Hawaii, and viewed the threats by KINNEY while in the State of Hawaii, and KINNEY is a resident of the State of Hawaii.  I know also that above-described posts by KINNEY traveled through computer servers outside the State of Hawaii used by Instagram (a social media platform owned by Meta Platforms, Inc.) prior to being viewed by Victims 1-3 in the State of Hawaii.

21.     On April 7, 2022, in District of Hawaii Mag. No. 22-490 RT, this Court issued a complaint charging KINNEY with violating 18 U.S.C. § 875(c) based on the above described threats to Victims 1-3, and issued a warrant for KINNEY's arrest, which has not yet been executed.

22.     In addition to the foregoing, on or about March 28, 2022, KINNEY also used Instagram to make threats to injure the VICTIM 4 , and VICTIM 5 . KINNEY posted a video to his Instagram account @IOANDJUSTICE, which, except as noted below, depicts the person I recognize as KINNEY based on known government photographs of him and his above described posts.  In the March 28, 2022 post, KINNEY made, among others, the following statements:

a.      "Fucking VICTIM 4 and VICTIM 5 [phonetic], go back to fucking New York where you guys came from. I'm telling you right now you guys are going to go back one way or another";

b.      A male in the background the same video is heard apparently responding to the above statement with, "Oh we going to hang them motherfuckers!";

c.      KINNEY responds to the above statement by saying, "I promise you they're going to be the fucking first ones";

    d.    Shortly afterwards, KINNEY states, "That we cut their heads off right in the fucking palace for treason for treason and human trafficking.";

    e.    Approximately one minute and forty seconds later in the same video, KINNEY states, "Eh VICTIM 4 you guys go Samoa for fucking grab fucking body guards. I tell you now you wait till I see you guys. Big boys. The bigger they are the harder they fall. I fucking going to put you guys jaw in the back of your guys head. One whack I promise you guys."

23.    As a direct result of the above statements, the Honolulu Police Department began providing additional officers to VICTIM 5's office. Likewise, the protection detail for VICTIM 4 also increased their threat awareness and relayed to the FBI that they would be changing their security posture as a result of the threats made by KINNEY.

24.    Based on my training and experience, I know that individuals often carry their identification documents, cell phones, tablets, and digital storage media and other devices on their persons or in containers or areas within their immediate control.

## DIGITAL EVIDENCE

25.    As noted above, KINNEY used Instagram multiple times on or about January 17, 2022, to record and post audio and video of himself making threats regarding the apparent beheading and other apparent acts of violence against

Victims 1-3. KINNEY made additional threatening posts through various Instagram accounts, namely @CANT.STOP.COWBOY and @IOANDJUSTICE, on other occasions to include on or about March 28, 2022 in which he threatened VICTIM 4 and VICTIM 5 . Further, as described above, KINNEY regularly posts to social media. I know from my training and experience that many recordings and streaming events posted to social media by individuals occurs through the use of a cell phone.

26.     Based on my training, experience, and research, I know that cell phones typically have, among others, capabilities that allow use as a cellular telephone, digital camera, audio and video recorder, portable digital media and storage device, GPS navigation device, a device for exchanging electronic communications, such as text messages, email, and instant or direct messaging, and a device for accessing third-party services, such as social media, intended to facilitate live, recorded, written, and other forms of communication.

27.     As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described in the warrant application, but also forensic evidence that establishes how the digital devices were used, the purpose of use, the identities of the users, and the timing of use. There is probable cause to believe that this forensic electronic evidence might be on the digital devices because:

15

a.    Digital devices, such as cell phones, video recorders, and other digital storage media and devices (such as hard drives, thumb drives, DVDs, CDs, and SD cards), can store data (information) for long periods of time.

b.    Things that have been viewed via the Internet (such as social media posts) are typically stored for some period of time on a digital device.

c.    Data on digital devices can provide evidence of a file that was once on the digital device but has since been deleted or edited, or of a deleted portion of a file, even when the data is not visible to a user of the digital device.

d.    Forensic evidence on digital devices can also indicate who has used or controlled the digital device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

e.    A person with appropriate familiarity with how a digital device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how the digital device was used, the purpose of its use, who used it, and when.

f.    The process of identifying the exact electronically stored information on digital devices that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored

16

on digital devices is evidence may depend on other information stored on digital devices and the application of knowledge about how digital devices behave. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

g.    Further, in finding evidence of how a digital device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a digital device.

28.    Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of digital devices consistent with the warrant. The examination may require authorities to employ techniques in the field or in a laboratory environment equipped with forensic tools, including but not limited to computer-assisted scans of the entire digital device, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

29.    Based on my training and experience, I know also that cell phone manufacturers, including Apple and Samsung, sell cell phones and other devices such as tablets that offer the user the ability to unlock the device via the use of biometric features, such as a fingerprint or thumbprint (collectively, "fingerprint") or facial or iris recognition as an alternative to a numeric or alphanumeric passcode or password.

17

a.      If a user enables fingerprint or touch access on a device, the user can unlock the device by pressing the registered finger(s) to the device's sensor.

b.      If a user enables facial recognition on a device, the user can unlock the device by holding the device in front of the registered face so that the device can compare the face to the registered face.

c.      If the user enables an iris recognition feature, the user can unlock the device by holding the device in front of the registered eye so that the so that the device can compare the iris of the eye to the registered iris.

d.      The passcodes or passwords that would unlock the digital devices subject to seizure and search under the proposed warrant are not known to law enforcement. Thus, law enforcement personnel may not otherwise be able to access the data contained within a device, making the use of biometric features necessary to the execution of the authorized search.

e.      I also know from my training and experience, as well as from information found in publicly available materials including those published by device manufacturers, that biometric features will not unlock a device in some circumstances even if such features are enabled. This can occur when a device has been restarted, inactive, or has not been unlocked for a certain period of time. Thus, in the event law enforcement personnel encounter a locked device equipped

18

with biometric features, the opportunity to unlock the device through a biometric feature may exist for only a short time.

      f.    Due to the foregoing, if law enforcement personnel find that a digital device subject to search may be unlocked using one of the aforementioned biometric features, the warrant I am applying for would permit law enforcement personnel to (1) press or swipe the fingers (including thumbs) of KINNEY to any fingerprint scanner on the device to activate fingerprint recognition; (2) hold the device in front of the face of KINNEY to activate facial recognition; and (3) hold the device in front of the eyes of KINNEY to activate iris recognition.

<b>CONCLUSION</b>

    30.    Based on the forgoing, I request that the Court issue the proposed search warrant.

    31.    Based on my training and experience, as well as the evidence described above, probable cause exists that (1) between on or about January 17, 2022 and on or about March 28, 2022,  KINNEY posted threatening communications to injure others in interstate commerce, namely via Instagram, and therefore violated 18 U.S.C. § 875(c); and (2) evidence of these violations, including the items specified in Attachment B, will be found on the property or person described in Attachment A.

19

**REQUEST FOR SEALING**

32.    I further request that the Court order that all papers in support of this

application, including the affidavit and search warrant, be sealed until further order

of the Court.  These documents discuss an ongoing criminal investigation that is

neither public nor known to all of the targets of the investigation.  Accordingly,

there is good cause to seal these documents because their premature disclosure

may give targets an opportunity to flee/continue flight from prosecution, destroy or

tamper with evidence, change patterns of behavior, notify confederates, or

otherwise seriously jeopardize the investigation.

Respectfully submitted,

Wyatt Tackett
Special Agent
Federal Bureau of Investigation

Sworn to under oath before me telephonically, and attestation acknowledged
pursuant to Federal Rule of Criminal Procedure 4.1(b)(2), on this 12th day of
April 2022, at Honolulu, Hawaii.



Rom A. Trader
United States Magistrate Judge

20

**ATTACHMENT A**

**Property to Be Searched**

The person to be searched is the person of Lindsey KINNEY, aka

"Cowboy," Date of Birth ▮▮▮▮▮ 1979, Social Security Number ▮▮▮▮▮

including the following on his person or within his immediate control: documents

and identification; digital devices such as cell phones, computers, tablets, and

digital storage media and devices (such as hard drives, thumb drives, DVDs, CDs,

and SD cards), including the cell phone assigned call number ▮▮▮▮-3006; and

other containers.

**ATTACHMENT B**

**Particular Things to be Seized**

All evidence of violations of 18 U.S.C. § 875(c) by Lindsey KINNEY or others yet to be identified individuals, including:

1. Digital devices such as cell phones, computers, tablets, and digital storage media and devices (such as hard drives, thumb drives, DVD's, CDs, and SD cards), including the cell phone assigned call number ████ ██-3006, all of which pursuant to this warrant may be searched for evidence, fruits and instrumentalities of violations of 18 U.S.C. § 875(c) by Lindsey KINNEY, and evidence of how the digital device was used, the purpose of its use, who used it, and when; and

2. Documents and identification which may be used to positively identify the carrier of said documents and devices.

In searching digital devices to seize the foregoing evidence, law enforcement executing this warrant or individuals assisting law enforcement may, in their discretion, search or image the digital devices on-site or seize and transport the digital devices and/or forensic images thereof to an appropriate facility to be searched at that location. If executing personnel find that a seized digital device may be unlocked using one of the biometric features described in the affidavit, including fingerprint or touch access, or facial or iris recognition, this warrant

authorizes law enforcement personnel executing the warrant to (1) press or swipe the fingers (including thumbs) of Lindsey KINNEY to any fingerprint scanner on the device to activate fingerprint recognition; (2) hold the device in front of the face of Lindsey KINNEY to activate facial recognition; and (3) hold the device in front of the eyes of Lindsey KINNEY to activate iris recognition, for the purpose of attempting to unlock the seized device in order to search the contents as authorized by this warrant.

As used in this warrant, the terms "records" and "information" include all writings, images, recordings, and other data stored in written, tangible, electronic, or any other format.

This warrant authorizes a review of electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronically stored information may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronically stored information to the custody and control of attorneys for the government and their support staff for their independent review.

2