Cassandra Stamm
Hawaii Bar # 11384
P.O. Box 1564
Kapaa, HI  96746
(808) 977-2528
caseystamm@hotmail.com
Counsel for Defendant Lindsey Kinney

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. 1:22-cr-00031-DKW |
| | ) | |
| Plaintiff, | ) | |
| | ) | DEFENDANT'S FIFTH |
| v. | ) | MOTION IN LIMINE (TO |
| | ) | EXCLUDE EVIDENCE |
| LINDSEY KINNEY, | ) | CONCERNING LANDLORD |
| | ) | SKK) |
| Defendant. | ) | |

**I.     Introduction and Background Facts.**

Mr. Kinney is charged by Superseding Indictment with posting threats to kill on Instagram on January 17 and March 28, 2022.  Docket Sub. No. 47 (Superseding Indictment).  The government alleges these Instagram posts were directed toward five known individuals identified in the indictment as Victims 1-5.  The government also seeks to introduce evidence of other acts by Mr. Kinney involving other individuals, including the owner of leased farmland identified herein as SKK.  Mr. Kinney and others reportedly spent time on SKK's leased property during the Spring of 2022.  Docket Sub. No. 60 at 4 ¶ 11.

Discovery produced by the government to date includes a report documenting

1

a single contact with SKK on April 5, 2022. SKK is an elderly man who owns farmland on Oahu. He rented the land to a leasee (not Mr. Kinney) with whom he has had multiple disputes. The property was used by several persons and a restraining order prohibited SKK from entering the property. SKK has been a party in at least nine separate restraining order cases. Regarding Mr. Kinney, SKK has alleged:

> Approximately three weeks ago [SKK] was forcibly removed from his property by Lindsey KINNEY and his men. [SKK] believed KINNEY was hired to do this by [his leasee]. [SKK] estimated approximately 20 people associated with KINNEY now inhabit the property. KINNEY appeared to act like a religious leader to the people on [SKK's] land. [SKK] stated KINNEY walked around the property with a big stick like Moses.

**II.   Argument.**

Evidence Rule 404(b) generally prohibits the government from presenting extrinsic evidence of uncharged crimes, wrongs, or acts to prove a person's character in order to show the person acted in accordance therewith on any particular occasion.[1] This rule protects defendants' Confrontation and Due Process rights under the Fifth and Sixth Amendments to the United States Constitution.

The limitation on admitting evidence of prior bad acts is meant to minimize the chance that a jury would convict a 'bad man' who deserves to be punished not because he is guilty of the crime charged but because of his other misdeeds and to

---

[1] Fed. R. Evid. 404(b)(1).

avoid the possibility that the jury will infer that if the accused committed other crimes, he probably also committed the crime charged.[2]

Evidence of prior bad acts is only admissible for a proper purpose such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.[3] The Ninth Circuit employs a four-part test to determine the admissibility of evidence under Evidence Rule 404(b) such that evidence of prior criminal conduct/prior acts may be admitted if the evidence: (1) tends to prove a material issue; (2) is not too remote in time; (3) is sufficient to support a finding that the defendant committed the other act; and (4) is similar to the offense charged (in cases where knowledge and intent are at issue).[4] If instead the evidence of other bad acts is more properly understood to be propensity evidence, the Court must exclude it.[5] In other words, the Court must ultimately be satisfied that the evidence "is probative of a material issue other than character."[6]

In addition to satisfying this four-part test, evidence of other acts must also satisfy the Evidence Rule 403 balancing test—its probative value must not be substantially outweighed by the danger of unfair prejudice, confusion of the issues,

---

[2] *United States v. Phillips,* 599 F.2d 134, 136 (6th Cir. 1979).
[3] Fed. R. Evid. 404(b)(2).
[4] *Duran v. Maywood*, 221 F.3d 1127, 1132-33 (9th Cir. 2000).
[5] *United States v. Bracy,* 67 F.3d 1421, 1433 (9th Cir. 1995).
[6] *Huddleston v. United States,* 485 U.S. 681, 686, 108 S. Ct. 1496, 99 L.Ed.2d 771 (1988).

or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.[7]  In this context, "[u]nfair prejudice," means "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."[8]

The Government has the burden of demonstrating extrinsic evidence of prior bad acts satisfies all the above-mentioned requirements.[9]  To do so, the Government "must articulate precisely the evidential hypothesis by which a fact of consequence may be inferred from the other acts evidence."[10]  The prosecution must not only identify the evidence that it intends to offer pursuant to Federal Rule of Evidence 404(b), it must "also articulate a non-propensity purpose for which the evidence is offered and the basis for concluding that the evidence is relevant in light of this purpose."[11]

---

[7] Fed. R. Evid. 403.
[8] *United States v. Allen*, 341 F.3d 870, 886 (9th Cir. 2003) (citations omitted); *citing,* Fed. R. Evid. 403, advisory committee notes; *Old Chief v. United States*, 519 U.S. 172, 180, 117 S. Ct. 644, 136 L. Ed. 2d 574 (1997) (unfair prejudice "speaks to the capacity of some concededly relevant evidence to lure the fact-finder into declaring guilt on a ground different from proof specific to the offense charged.").
[9] *United States v. Montgomery*, 150 F.3d 983, 1000, 1001 (9th Cir. 1998).
[10] *United States v. Mayans,* 17 F.3d 1174, 1181 (9th Cir. 1994).
[11] Fed. R. Evid. 404, Advisory Committee Notes on 2020 amendments; *see also, United States v. Kendall,* 766 F.2d 1426, 1436 (10th Cir. 1985) ("The Government must articulate precisely the evidentiary hypothesis by which a fact of consequence may be inferred from the evidence of other acts.  In addition, the trial court must specifically identify the purpose for which such evidence is offered and a broad statement merely invoking or restating Rule 404(b) will not suffice.").

The Government has not articulated any evidential hypotheses by which this evidence concerning SKK tends to prove any material issue herein. The evidence concerning SKK does not involve any publicly available social media posting or any alleged threats. Though SKK claims he was wrongfully removed from his property, he was also informed by Honolulu police that *he* would be arrested if he returned due to a restraining order. This evidence is not probative of any material issue in Mr. Kinney's case. It is not similar to the charged offenses. Presentation of this evidence will necessitate a dispute about whether SKK's removal from the property was lawful and the landlord/tenant issues surrounding the same wasting time and confusing the issues. The only real value in presenting such evidence is to paint Mr. Kinney as a bad man who was mean to an elderly man for no good reason (and perhaps as an eccentric man who walks around like Moses). All of this is prohibited by the Federal Rules of Evidence.

**III. Conclusion.**

The government's attempt to bolster its case with other evidence concerning SKK is an inappropriate attempt to introduce propensity evidence. This evidence should be excluded pursuant to Federal Rules of Evidence 402, 403, and 404(b).

DATED this 22nd day of November, 2022.

/s/ Cassandra Stamm
Law Offices of Cassandra Stamm, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on November 22, 2022, I electronically filed the foregoing Fifth Motion in Limine with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the Government.

/s/  Cassandra Stamm
Law Offices of Cassandra Stamm, LLC
