IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>LINDSEY KINNEY,<br><br>Defendant. | Case No. 22-cr-31-DKW<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION** |

Defendant Lindsey Kinney moves to dismiss the charges against him for two counts of transmission of a threat via interstate commerce, in violation of 18 U.S.C. § 875(c) ("Section 875(c)"), claiming this Court lacks subject matter jurisdiction.[1] *See* Dkt. No. 131.[2] Kinney contends that Section 875(c), as applied to his online threats—which were posted on Instagram in Hawai'i, directed at persons in Hawai'i, and transmitted to those persons via Instagram servers located outside of Hawai'i—violates the Commerce Clause of the United States Constitution.

---

[1] Kinney was tried and found guilty of both counts following a six-day jury trial beginning on January 31, 2023. *See* Dkt. Nos. 117–18, 122, 124, 130, 133, 138. He filed the instant motion after the close of the Government's case-in-chief on February 6, 2023. *See* Dkt. Nos. 130–31. The Government opposed the motion on February 10, 2023, Dkt. No. 146, and Kinney replied on February 13, 2023. Dkt. No. 147.

[2] A party may move to dismiss for lack of jurisdiction at any time. Fed. R. Crim. P. 12(b)(2).

1

> Section 875(c) provides, in relevant part:
>
> Whoever transmits in interstate or foreign commerce any communication containing . . . any threat to injure the person of another, shall be fined under this title or imprisoned not more than five years, or both.

Kinney asserts that Section 875(c) derives its constitutionality from the Commerce Clause, by criminalizing only those threats transmitted "in interstate commerce"—those threats that cross state lines. *See* Dkt. No. 131 at 4–5 (calling this phrase the statute's "jurisdictional hook"); *United States v. Wright*, 625 F.3d 583, 594 (9th Cir. 2010) ("[O]ur precedent indicates that criminal statutes punishing the transmission of the relevant material 'in interstate or foreign commerce' require the material itself to cross state lines."); *see also United States v. Oxendine*, 531 F.2d 957 (9th Cir. 1976) (holding a district court lacked jurisdiction where alleged threats were transmitted via a radio transmitter that was *capable* of sending interstate messages, but where there was no proof that the messages in question had *actually traveled* across state lines); *State v. Korab*, 893 F.2d 212, 213 (9th Cir. 1989) (holding the government had to prove that alleged threatening telephone calls traveled across state lines).

Kinney also notes that the Ninth Circuit has previously held that the "use of the Internet, standing alone," is insufficient to satisfy the "interstate commerce" requirement. Dkt. No. 131 at 5–6 (citing *Wright*, 625 F.3d at 594–95 (finding an absence of jurisdiction where the files in question never crossed state lines)).

2

However, the flaw in Kinney's argument, as the Government points out, is that the Government's evidence in this case consisted of *more* than the sole fact that the Internet was used. Rather, as Kinney himself concedes, and as he stipulated at trial, the Instagram posts at issue here *did* travel across state lines when they were uploaded to out-of-state servers. *See* Dkt. No. 131 at 6 ("Meta, Inc. does not use any servers in the State of Hawai'i. Rather, Meta, Inc. exclusively uses servers in other states or in foreign countries. This means that each and every Instagram post made by a person in Hawai'i is transmitted in interstate or foreign commerce even if that post is only seen by another person in Hawai'i."); Dkt. No. 95; Govt Trial Exh. No. 10. Therefore, *Oxendine* and *Wright*—involving communications that *did not* travel across state lines—simply do not apply here. *See* Dkt. No. 131 at 4–6. In contrast, some of the other cases to which Kinney cites are more on-point and defeat his argument. For instance, in *United States v. Sutcliffe*, 505 F.3d 944, 953 (9th Cir. 2007), the government presented evidence that a California website was uploaded to various servers located in Louisiana, North Carolina, and Virginia. The Ninth Circuit held that, even though the upload to the out-of-state servers was not necessarily intended by the website's creator, but was, rather, a necessary step of the website's Internet publication journey, "this interstate transfer of information by means of the internet satisfie[d] the jurisdictional elements" of the "interstate commerce" requirement of

the statute at issue. So too here, where Kinney's Instagram posts crossed interstate lines via Meta's servers in order to reach, among others, Kinney's victims.

## CONCLUSION

For the foregoing reasons, Kinney's motion to dismiss for lack of jurisdiction, Dkt. No. 131, is DENIED.[3]

IT IS SO ORDERED.

DATED: March 8, 2023 at Honolulu, Hawai'i.



Derrick K. Watson
Chief United States District Judge

---

*United States of America v. Lindsey Kinney*; Cr 22-00031 DKW; **ORDER DENYING DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

---

[3]To the extent Kinney attempts to assert a facial, rather than an as-applied, challenge, he does not explain the argument. Moreover, Congress' powers under the Commerce Clause are extensive. *See Heart of Atlanta Motel, Inc. v. United States*, 379 U.S. 241, 256 (1964) ("[T]he authority of Congress to keep the channels of interstate commerce free from immoral and injurious uses has been frequently sustained, and is no longer open to question."). And Section 875(c), as it reaches *interstate* Internet transmissions is consistent with, and even identical to, the reach of other statutes courts have found to be constitutional. *See, e.g., United States v. Jinian*, 725 F.3d 954, 968 (9th Cir. 2013) ("The wire fraud statute falls within the extensive reach of the Commerce Clause . . . .") (internal quotation marks and citation omitted).